**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|                              |   |                        |
|------------------------------|---|------------------------|
|                              | * |                        |
| **MARQUIS NEAL** *et al.*,   | * |                        |
| **Plaintiffs**               | * |                        |
| **v.**                       | * | **CIVIL NO.  JKB-11-3707** |
| **RESIDENTIAL CREDIT**       | * |                        |
| **SOLUTIONS, INC.,**         | * |                        |
| **Defendant**                |   |                        |

\* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM**

*I. Background*

     This lawsuit was filed in the Circuit Court for Baltimore County, Maryland, by Marquis and Xanthe Neal against Residential Credit Solutions, Inc. ("RCS"), who was the loan servicer on their home mortgage.  (Compl., ECF No. 2.)  The Neals alleged RCS used unfair and deceptive practices in leading them into a wrongful foreclosure.  (*Id.* ¶ 1.)  RCS removed the case to federal court (ECF No. 1) and filed an answer and counterclaim (ECF No. 8).  In the counterclaim for breach of contract based on the Neals' alleged failure to repay their promissory note, RCS alleged it "is the current loan servicer of the [promissory note], and is also authorized by the Note's owner to be the holder of the Note for collection purposes."  (*Id.* ¶ 8.)

     Pending before the Court are Plaintiffs' renewed motion to dismiss the counterclaim because of lack of standing (ECF No. 20), RCS's motion for summary judgment both as to Plaintiffs' complaint and RCS's counterclaim (ECF No. 29), and Plaintiffs' motion for partial summary judgment as to Count One of their complaint, alleging a violation of the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law § 13-301 *et seq.* (LexisNexis

2005 & Supp. 2012) (ECF No. 30). The Court has considered the motions and responses and replies thereto (ECF Nos. 21, 31, 32, 33) and finds no hearing is necessary, Local Rule 105.6 (D. Md. 2011). Plaintiffs' motion to dismiss the counterclaim and motion for partial summary judgment on Count One of the complaint will be denied. RCS's motion for summary judgment will be granted in part and denied in part.

## II. Standing Challenge on Counterclaim

### A. Standard

Plaintiffs have challenged RCS's standing to bring its counterclaim. The Neals argue that RCS, as a mere loan servicer, is not entitled to sue on the note. This argument is a challenge to the subject-matter jurisdiction of the Court since a case or controversy under Article III of the United States Constitution only exists as to the counterclaim if RCS can claim some injury because of the Neals' alleged default on the note. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (to have standing, one must claim (1) "injury in fact" that is concrete and particularized, and either actual or imminent, (2) injury has causal connection to defendant's conduct, and (3) injury is likely redressable by favorable decision). The burden of proving subject-matter jurisdiction is on the party asserting the claim. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982) (noting jurisdictional challenge may be either facial, *i.e.*, pleading fails to allege facts upon which subject-matter jurisdiction can be based, or factual, *i.e.*, jurisdictional allegations of pleading are not true). *See also Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (same); *Richmond, Fredericksburg & Potomac Ry. Co.*, 945 F.2d 765, 768 (1991) (same). In the case of a factual challenge to subject-matter jurisdiction, it is permissible for a district court to "consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg*, 945 F.2d at 768 (citing *Adams*, 697 F.2d at 1219).

### B.  Analysis

As noted in the Court's earlier memorandum and order denying Plaintiffs' original motion to dismiss, RCS has adequately alleged factual content in its counterclaim establishing it as one with authority to sue on the note.  (Mem. & Order, Apr. 24, 2012, ECF No. 19.)  Thus, to the extent Plaintiffs' argument could be construed as a facial challenge to RCS's standing, that argument fails.  But Plaintiffs have challenged the underlying facts of RCS's standing to sue on the note.  Although Plaintiffs have provided evidence to support their motion, RCS has countered by submitting guidelines from the Federal National Mortgage Association ("Fannie Mae") governing the relationship between Fannie Mae and loan servicers.  (Def.'s Opp., Ex. 1A, ECF No. 31.)  These guidelines conclusively establish that Fannie Mae allows a loan servicer to have temporary possession of the mortgage note "whenever the servicer, acting in its own name, represents the interests of Fannie Mae in foreclosure actions, bankruptcy cases, probate proceedings, or other legal proceedings."  (*Id.* § 202.07.02.)  Thus, the servicer becomes the holder of the note.  (*Id.*)  Consequently, the Court concludes that RCS has standing to sue on the note as its holder.  Plaintiffs' motion to dismiss the counterclaim is without merit.

### III.  Standard for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)).  The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  However, the "mere

existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252. The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008), who may not rest upon the mere allegations or denials of his pleading but instead must, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial, Fed. R. Civ. P. 56(c)(1). Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit. Rule 56(c)(4).

## IV.  *RCS's Motion for Summary Judgment*

### A.  *RCS's Counterclaim for Breach of Contract*

As previously noted, RCS has established that it is the holder of the note for purposes of its counterclaim against the Neals, alleging a default of their obligation to repay the promissory note. The Neals have never denied that they executed the note or that they are in default with respect to it. Indeed, Mr. Neal testified in his deposition that they had not made payments on the note in all of 2010 and up to their depositions in October 2011. (Def.'s Mot. Summ. J. Ex. 6, Marquis Neal Dep. 36:11-19; 37:14:17, Oct. 3, 2011, ECF No. 29.) And Mrs. Neal testified to the same effect at a hearing in the course of the foreclosure proceeding. (Pls.' Mot. Partial Summ. J., Ex. 3, Hearing Tr. 31, Oct. 11, 2011, ECF No. 30.)   Their only argument against RCS's entitlement to judgment on its counterclaim rests upon their argument to dismiss the counterclaim. (Pls.' Opp. Supp. Mem. 2, ECF No. 32.) Since they make no other argument on the merits of the counterclaim, and since their motion to dismiss is being denied as unmeritorious, RCS has clearly established it is entitled to judgment. Thus, RCS's motion for summary judgment on the counterclaim will be granted.

4

### B.  Plaintiffs' Complaint

The Neals have asserted five causes of action in their complaint:

- Count One – Violations of the Maryland Consumer Protection Act

- Count Two – Common law fraud

- Count Three – Promissory Estoppel

- Count Four – Negligence

- Count Five – Negligent Misrepresentation

All of the counts are based upon a common set of facts:  In September 2007, the Neals took out a mortgage on their residential property in Pikesville, Maryland.  RCS was assigned the servicing rights on the mortgage in March 2009.  Six months later, Mr. Neal's business ran into financial difficulties and Mrs. Neal contacted RCS to inquire about a loan modification.  They submitted the necessary paperwork for loan modification in December 2009.  (Compl. ¶ 11-14.) What happened after that is subject to dispute.

The Neals have contended, and evidence supports their contentions, that they called RCS in early January 2010 to find out the status of their application for modification of their loan, that the RCS representative told them they did not qualify because they were current in their mortgage payments, and that the representative recommended they not make their January payment; they did not make the January payment based on this advice. (Pls.' Mot. Partial Summ. J. Ex. 3, Hearing Tr. 14-15, Oct. 11, 2011, ECF No. 30.)  The Neals called RCS back in late January for a status update and again in early February, at which time they were told not to make the February payment.  (*Id.* 15-16.)   In mid-February, RCS requested additional paperwork, which the Neals provided.  (*Id.* 17.)  At some point after that in February 2010, the Neals were told over the telephone by an RCS representative that they were approved for loan modification and the representative gave them the new monthly payment amount of $1,634, roughly two

hundred dollars less than their original mortgage payment of approximately $1,840. (*Id.* 18-19.) After discussing this amount, the Neals called RCS back and said they would accept the new amount. (*Id.* 19-20.) At that time, they were told RCS would send them additional paperwork for them to sign. (*Id.* 20.) Three times after that during March and April 2010, RCS confirmed it was going to send the required paperwork to the Neals. (*Id.* 20-21.) At the beginning of March, the Neals received a notice from RCS of intent to foreclose, but an RCS representative told them that was automatic and the Neals should not worry about it. (*Id.* 21.) Because the skipped payments were going to be added to the end of the loan, the Neals used the money for the withheld payments to pay other debt. (*Id.* 22, 26.) In March, Mrs. Neal attempted to pay online the monthly payment amount, trying both the new, lower amount and the original amount, but the payment processing system did not accept her payment. (*Id.* 21-22.) She called RCS to find out what was wrong, and she was told their application for loan modification was denied. (*Id.* 22.) In addition, the RCS representative told her the Neals would have to pay $5,000 and their new monthly payment would be $2,200. (*Id.* 25.) In late June 2010, they were given a total amount to pay, including fees, to cure the default, but that occurred after RCS filed a foreclosure action. (*Id.* 27.)

The essence of the Neals' complaint is that they were given false information—that they should withhold their monthly payments during the application process, that they were approved for a new lower monthly payment and they were to await the final paperwork, and that their missed payments would be added to the end of the mortgage—on which they relied to their detriment inasmuch as their credit rating was adversely affected by the withheld payments and the declaration of default and they forewent an opportunity to refinance their mortgage. (Def.'s Mot. Summ. J. Ex. 9, Xanthe Neal Aff. ¶ 14; Ex. 10, Marquis Neal Aff. ¶ 14.) They have also provided sworn testimony that their experience with RCS gave them physical symptoms of

stress, including vomiting, headaches, sleep loss, and other physical symptoms.  (*Id.* Xanthe Neal

Aff. ¶ 13; Marquis Neal Aff. ¶ 13.)

The Neals' evidence, if credible, is sufficient for a fact-finder to render judgment in their

favor on the first cause of action they have pled.  Under the MCPA, any person may bring an

action to recover for injury or loss sustained by him as the result of a practice prohibited by the

MCPA, § 13-408; the Neals have asserted that RCS's conduct violated the MCPA's prohibition

on unfair or deceptive trade practice, § 13-303, because RCS's communications constituted

either a false or misleading oral statement that had the capacity, tendency, or effect of deceiving

or misleading the Neals, § 13-301(1), or a deception, fraud, false pretense, false premise,

misrepresentation, or omission of a material fact with the intent that the Neals would rely upon it,

§ 13-301(9).  RCS has argued in its motion for summary judgment that "the Neals have failed to

allege that they have suffered any objectively identifiable damages as the only damages they

claim to have suffered as a result of their reliance on RCS's alleged misleading statements is a

reduction of their credit score and mental anguish.  Neither of said alleged damages constitutes

an amount spent by a consumer or an objectively identifiable loss which was caused by the

alleged reliance."  (Def.'s Mot. Summ. J. Supp. Mem. unnumbered page.)

Two cases from the Maryland Court of Appeals address the issue of consumer injury in

the context of the MCPA.  In *CitaraManis v. Hallowell*, 613 A.2d 964 (Md. 1992), the court

explained that the damages due to a consumer under § 13-408 "are for 'injury and loss'—such as

will compensate the injured party for the injury sustained due to the defendant's acts and for

indirect consequences of such acts."  *Id.* at 969.  The opinion of *Lloyd v. General Motors Corp.*,

916 A.2d 257 (Md. 2007), contained the following statement:

> We have, in earlier cases, established that, in order to articulate a cognizable
> injury under the Consumer Protection Act, the injury must be objectively
> identifiable.  In other words, the consumer must have suffered an identifiable loss,

measured by the amount the consumer spent or lost as a result of his or her
reliance on the sellers' misrepresentation.

*Id.* at 277.

Damage to one's credit score and resulting inability to refinance a mortgage are
objectively identifiable losses.  Further, the physical symptoms of stress fall within the phrase,
"indirect consequences of [defendant's] acts," as used in *CitaraManis*.  The Court is satisfied
that Plaintiffs' evidence is sufficient to meet the Maryland standard; consequently, it will be
within the jury's province to decide an appropriate measure of damages under the MCPA in the
event the jury returns a favorable verdict to Plaintiffs under Count One.  To the extent RCS's
evidence contradicts Plaintiffs' evidence regarding statements made by RCS's representatives,
the Court concludes a genuine dispute of material fact exists and RCS, therefore, is not entitled
to judgment as a matter of law.  Consequently, RCS's motion for summary judgment on Count
One will be denied.

In addition, Plaintiffs' evidence as outlined above is sufficient to go to the jury under
their theories of promissory estoppel and negligent misrepresentation.  The Court has reviewed
the applicable standards of Maryland law on each of these causes of action.  Promissory estoppel
is another term for the doctrine of detrimental reliance set out in *Pavel Enterprises, Inc. v. A.S.*
*Johnson Co., Inc.*, 674 A.2d 521, 532 (Md. 1996) (cause of action based on clear and definite
promise where promisor has reasonable expectation offer will induce action or forbearance on
promisee's part and such action or forbearance is induced, causing detriment avoidable only by
enforcement of promise).  Although evidence supports a theory of detrimental reliance, it only
does so in relation to RCS's promise that the missed payments would be added to the end of the
loan.  Nothing else, as far as the Court can discern, amounts to a "clear and definite promise."

Negligent misrepresentation is a long established cause of action, as observed in *CitaraManis*, 916 A.2d at 273 (defendant breaches duty of care to plaintiff by negligently asserting false statement, intending plaintiff's reliance upon statement and knowing plaintiff probably will rely upon statement to his loss or injury; plaintiff justifiably relies upon statement and suffers damage proximately caused by defendant's negligence (citing *Virginia Dare Stores v. Schuman*, 1 A.2d 897, 899 (Md. 1938))).  The Court notes that the duty of care applicable to the Plaintiffs' negligent misrepresentation arises from their existing contractual relationship with RCS based upon their original mortgage.  In this regard, it is fair for Plaintiffs to contend that RCS had a duty to provide truthful information to Plaintiffs to maintain their mortgage in good standing; thus, it was inconsistent with that duty to advise Plaintiffs to miss mortgage payments to be eligible for loan modification, to advise them they were approved for loan modification and to await the paperwork, and to advise them the missed payments would be added to the end of the mortgage when none of that information was true and when they relied upon that information leading up to RCS's declaration of default.  Thus, RCS's motion for summary judgment on Counts Three and Five will be denied.

Certain counts are not sustainable based on the evidence before the Court.  The claim of common law fraud fails.  The elements of common law fraud are set forth in *Gourdine v. Crews*, 955 A.2d 769, 791 (Md. 2008) (false representation by defendant to plaintiff; falsity either known to defendant or representation made with reckless indifference as to its truth; misrepresentation was made for purpose of defrauding plaintiff; plaintiff had right to rely upon representation and did so rely; plaintiff suffered compensable injury caused by misrepresentation).  The record contains no evidence that any misrepresentation was done for the purpose of defrauding the Neals.  RCS's motion for summary judgment, therefore, will be granted as to Count Two.

The claim of negligence also fails.  In the context of loan applications, Maryland's highest court has found a tort duty by a creditor to its customer to use reasonable care in the processing and determination of an application for credit.  *Jacques v. First Nat'l Bank of Md.*, 515 A.2d 756, 761-63 (Md. 1986).  This tort duty does not exist in all cases, though, and it only existed in *Jacques* because the plaintiffs had an express contract with the bank to process their application and because of the existence of special circumstances, specifically, the Jacqueses' vulnerability to risk and dependence upon accurate loan processing, with the bank being aware of that circumstance, and the public interest in banking.  *Id.* at 762-63.  The *Jacques* court observed that the likely harm from negligent processing of a loan application is limited to economic loss, *id.* at 760, and concluded:

> Where the failure to exercise due care creates a risk of economic loss only, courts have generally required an intimate nexus between the parties as a condition to the imposition of tort liability.  This intimate nexus is satisfied by contractual privity or its equivalent.  By contrast, where the risk created is one of personal injury, no such direct relationship need be shown, and the principal determinant of duty becomes foreseeability.

*Id.* at 759-60.

Although it is true the Neals had contractual privity with RCS by virtue of their original mortgage, that does not govern whether RCS owed the Neals a duty of care in the processing of their loan modification application.  They are separate inquiries.  The Neals' negligence count in Count Four is premised upon a failure by RCS to use due care "in connection with their loan modification application."  (Compl. ¶ 57.)  Simply submitting an application for a loan modification is insufficient to establish the "intimate nexus" that *Jacques* requires:

> The case before us is factually distinguishable from those in which a prospective customer simply submits an application for a loan, or for insurance, and thereafter claims that the unilateral act of submitting the application gives rise to a duty on the part of the recipient to act upon it without delay.  The courts have generally held in those instances that the bank or insurance company has not undertaken to

> process the application, and therefore has no duty to do promptly that which it has
> no duty to do at all.

515 A.2d at 762.  *See Parker v. Columbia Bank*, 604 A.2d 521, 535 (Md. Ct. Spec. App. 1992)

("In sum, in cases like the one at hand where there are none of these special circumstances and

no contractual basis for a special duty of care is alleged, a lender owes no duty of care to its

borrower.")  The Court has found no special circumstances and no contractual basis to confer a

tort duty of care on RCS as to the loan modification application.  *See also Spaulding v. Wells

Fargo Bank*, Civ. No. GLR-11-2733, 2012 WL 3025116, at *6 (D. Md. Jul. 23, 2012) (plaintiffs

and bank did not enter into implied or express contract for processing of loan modification

application).  The Court also notes that the undisputed evidence in the record shows that the

Neals did not qualify for the loan modification because of their "extensive credit card debt."

(Def.'s Mot. Summ. J., Ex. 3, ¶ I.)  Thus, RCS could not breach a duty of due care in the

processing and determination of the application since the Neals were not entitled to a

determination in their favor.  For these reasons, RCS's motion for summary judgment on Count

Four will be granted.

The Court notes that RCS has advanced an interesting theory that Plaintiffs' state law

claims are foreclosed by the fairly universal acceptance by courts that no private right of action

lies for a denial of a loan modification under the Home Affordable Modification Program

("HAMP"), but has cited no authority for this theory of implicit preemption.  (Def.'s Mot.

Summ. J. Supp. Mem. unnumbered page.)  In fact, other decisions from the District of Maryland

have concluded that state law claims are not foreclosed by the fact that they arose in the context

of HAMP.  *See, e.g.*, *Legore v. OneWest Bank*, Civ. No. BEL-11-589, 2012 WL 4903087, *4 (D.

Md. Oct. 15, 2012) *and cases cited therein*.  The undersigned adopts that conclusion here.

### *V. Plaintiffs' Motion for Partial Summary Judgment*

Plaintiffs seek summary judgment on Count One, alleging violations of the MCPA. (ECF No. 30.)  They assert that a decision in the state court foreclosure action collaterally estops RCS from denying liability under the MCPA.  Plaintiffs are mistaken.

Under Maryland law, collateral estoppel may be employed to bar relitigation of facts in a subsequent proceeding.  Thus, "[c]ollateral estoppel is not concerned with the legal consequences of a judgment, but only with the findings of ultimate fact, when they can be discovered, that necessarily lay behind that judgment."  *Colandrea v. Wilde Lake Community Association*, 761 A.2d 899, 909 (Md. 2000).  The four-part test governing collateral estoppel is as follows:

1. Was the issue decided in the prior adjudication identical with the one presented in the action in question?

2. Was there a final judgment on the merits?

3. Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?

4. Was the party against whom the plea is asserted given a fair opportunity to be heard on the issue?

*Id.*

The state court foreclosure action was dismissed without prejudice, as was the Neals' counterclaim under the MCPA.  (Pls.' Mot. Partial Summ. J. Ex. 3, Hearing Tr. 14-15, Oct. 11, 2011, ECF No. 30.)  Thus, it clearly was not a final judgment on the merits.  *See Moore v. Pomory*, 620 A.2d 323, 325 (Md. 1993) ("The effect of the designation 'without prejudice' is simply that there is no adjudication on the merits and that, therefore, a new suit on the same cause of action is not barred by principles of res judicata.").  Consequently, Plaintiffs are not entitled to summary judgment on Count One, and their motion will be denied.

## VI. *Conclusion*

By separate order, the Court will deny Plaintiffs' motion to dismiss, grant in part and deny in part Defendant's motion for summary judgment, and deny Plaintiffs' motion for partial summary judgment.

DATED this  1st  day of February, 2013.

BY THE COURT:

          /s/

James K. Bredar
United States District Judge
